FILED
IN CLERKS OFFICE

2004 OCT 25  P 2: 44

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GEORGE LOGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-CV-10824-DPW |
| ) | |
| MICHELE VAKILI, ) | |
| ) | |
| Defendant ) | |

## MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(1) and (6), the defendant Michele Vakili ("Vakili") respectfully moves to dismiss the Complaint filed by the plaintiff, George Logue ("Logue"). This Court lacks subject matter jurisdiction over the claims as Vakili did not act under the color of state authority during her representation of Logue to support a claim of civil rights violations under 28 U.S.C. § 1983. In addition, the Court should dismiss the Complaint because it fails to state a claim upon which relief can be granted as Vakili was incapable of maliciously prosecuting him as defense counsel to Logue in a criminal matter. Moreover, Logue fails to allege any facts evidencing two of the four factors for a claim of intentional infliction of emotional distress: 1) that Vakili's conduct was extreme or outrageous, beyond all bounds of decency, or utterly intolerable in a civilized community, and 2) that the distress was so severe that no reasonable man could be expected to endure it. Finally, Logue fails to allege facts to support a claim that Vakili is responsible for any damages, if Logue actually suffered damages.

## Factual Background

Vakili is an attorney licensed before the courts of the Commonwealth of Massachusetts. (Affidavit of Michele Vakili, at ¶ 1). In 2003, Vakili maintained a contract with the City of Cambridge to accept court appointments. (Id., at ¶ 2). On January 28, 2003, Vakili was at Cambridge District Court when Logue, who was then a defendant in a criminal matter, attempted to argue a motion before the District Court. The trial judge explained that Logue had the right to a court-appointed attorney. Logue accepted, and the court assigned Vakili to the case. (Complaint, First Cause at ¶ 5).

Logue and Vakili conferenced on January 28th, and with the court's permission, scheduled a pre-trial conference for February 28, 2003. (Id.). Prior to the pre-trial conference, Logue left Vakili two to three voicemails concerning his case. In one voicemail, Logue stated he had filed a motion to dismiss the charges against him. Logue filed the motion without showing the motion to Vakili. (Affidavit, at ¶ 5). In the final voicemail, Logue, who was not in prison at any point during his case, indicated that he could not attend the pre-trial conference because he was in Chicago. (Complaint, First Cause at ¶ 5). Vakili contacted the court and rescheduled the pre-trial hearing for March 11, a date picked by the court. Vakili informed Logue through the only means she had, by letter, to two addresses Logue had given her.[1] (Affidavit, at ¶ 7).

Vakili was unable to attend the March 11 hearing due to an illness. She informed the District Court, but had no means of contacting Logue on short notice. Logue did not attend the hearing, and a default entered. Vakili informed Logue he needed to cure the default, which he promptly did. (Id., at ¶¶ 8-9). The pre-trial hearing was rescheduled for March 28, 2003. Vakili and Logue met prior to the hearing to discuss the case. Logue wanted Vakili to argue his motion

---

[1] By all accounts, Logue is homeless. Logue provided Vakili with two mailing addresses to which she could send correspondence. One was his sister's home in Brighton. The second was General Delivery at a U.S. Post Office. Logue, however, never provided Vakili with a telephone number where Vakili could reach him.

2

to dismiss. As Vakili had not seen the motion before the meeting, she did not want to argue it because she could not intelligently speak about the arguments. In addition, she did not believe it was the appropriate time to make the motion. (Id. at ¶ 10). Logue discharged Vakili at that time. Logue unsuccessfully argued the motion on March 28. The District Court assigned a new court-appointed attorney at that time. (Id., at ¶ 11). After providing her files to the new attorney, Vakili had no further contact with Logue or his case. Ultimately, the charge against Logue was dismissed. (Id., at ¶ 11-12).

**Argument**

I.  This Court Lacks Subject Matter Jurisdiction Because By Operation of Law, Court-Appointed Defense Counsel Cannot Commit A Civil Rights Violation

The District Court appointed Vakili as counsel for Logue. A court-appointed attorney cannot be sued for civil rights violations under 42 U.S.C. § 1983. As the remainder of Logue's claims are state-law counts, this court does not have jurisdiction over the dispute.[2] The Supreme Court of the United States has established that a district court properly exercises jurisdiction under Section 1331 when a plaintiff's complaint is based on a right conferred under federal law. Oneida Indian Nation v. Cty. of Oneida, 414 U.S. 661, 666, 39 L. Ed. 2d 73, 94 S. Ct. 772 (1974). Even viewing the allegations of the Complaint in the light most favorable to Logue, as this Court must do, no such federal right exists in this case.

The United States Supreme Court ruled that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk Cty. v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d

---

[2] 28 U.S.C. § 1331 grants the district court original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

3

509 (1981).³ In the Dodson case, as with Logue's claim here, the plaintiff relied on the defendant's full-time employment by the county as a public defender.

A person acts under color of state law only when exercising powers "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." U.S. v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). In the Dodson case, the Supreme Court found that the public defender's assignment entailed no functions or obligations dependent on state authority. Dodson, 454 U.S. at 516, 102 S.Ct. at 449. The Supreme Court said at the moment the public defender accepted the appointment, she became the plaintiff's attorney and other than the source of payment, their relationship became identical to that between any other attorney and client. *Id.*

Under our legal system, the duties of a defense lawyer are that of personal counselor and advocate. Despite the fact that an attorney may still be considered an "officer of the court," "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Id.* 454 U.S. at 516, 102 S.Ct. at 450. The system posits that a defense lawyer best serves the interest of the public and justice by advancing the undivided interests of his client, and not acting on behalf of the state or in concert with it. *Id.*

In Dodson, the Supreme Court held that the defendant's employment status was insufficient to deem a public defender as acting under color of state law. In Dodson, the public defender was a full-time county employee, subject to supervision and administrative direction by the county. No such full-time status exists here. Vakili was an independent contractor with the City of Cambridge, receiving only a paycheck for the representations taken on. Vakili was in no

---

³ See also Pigott v. Lynn Police Dept., 1993 U.S. App. LEXIS 24692, *12 (1ˢᵗ cir. Sept. 27, 1993), and Oyegbola v. Murray, 791 F.Supp. 334 (D.Mass. 1992).

4

way subject to supervision by Cambridge, creating even less reason for a court to determine she acted on behalf of the municipality.

The Supreme Court held there were certain functions in which a public defender could act under color of state law, but that those instances did not include performance of traditional attorney functions. *Id.* 454 U.S. at 520, 102 S.Ct. at 453.

II.     The Court Has the Power to Dismiss This Case Sua Sponte

This case was filed pursuant to 28 U.S.C. § 1915(d) as Logue filed for leave to proceed *in forma pauperis* ("IFP"), a motion granted by this Court on April 30, 2004. Under § 1915(d), courts may dismiss IFP complaints *sua sponte* if the plaintiff's legal claim is based on an indisputably meritless legal theory or on factual allegations that are clearly baseless. Pigott v. Lynn Police Dept., 1993 U.S. App. LEXIS 24692, *12 (1st cir. Sept. 27, 1993) citing Denton v. Hernandez, 504 U.S. 24, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As described above, Logue's claim under § 1983 is legally meritless, as he cannot proceed for civil rights violations against his court-appointed defense counsel for the performance of typical attorney functions. Therefore, this Court has the power and right to dismiss the civil rights claims against Vakili. It must do so in the interests of justice.

III.    Logue's Complaint Fails To State Claims On Which Relief Can Be Granted

To the extent this Court does not dismiss Logue's claim for lack of subject matter jurisdiction, it must dismiss all three counts on the basis that Logue's complaint fails to state grounds upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). In adjudicating motions to dismiss under Fed.R.Civ.P. 12 (b) (6), the Court must accept all allegations in the Complaint as true and all reasonable inferences must be drawn in favor of the plaintiffs. Rockwell v. Cape

Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). The Complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). That general proposition notwithstanding, "bald assertions,...subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. U.S. v. AVX Corp., 962 F.2d 108, 115 (1 Cir., 1992).

Here, the allegations in the Complaint do not support claims of malicious prosecution or intentional infliction of emotional distress. Accordingly, the Court should dismiss Logue's claims for malicious prosecution and/or intentional infliction of emotional distress.

### a. Logue cannot make out a case for malicious prosecution against court-appointed defense counsel.

In what Logue refers to as "Second Cause" in his complaint, he claims that Vakili assisted in maliciously prosecuting him. Logue alleges that Vakili acted to continue the criminal case against him. (Complaint, Second Cause at ¶2). Logue's complaint alleges that the purpose of Vakili's actions was done to continue the criminal process against him (Complaint, Second Cause at ¶ 3). Logue's count for malicious prosecution fails.

A claim for malicious prosecution has three factors: 1) initiation of criminal proceedings against the plaintiff with malice, 2) without probable cause, and 3) the proceedings were terminated in the plaintiff's favor. Beecy v. Pucciarelli, 387 Mass. 589, 593-95 (1982). Vakili does not dispute that criminal proceedings were initiated against Logue, nor that the charges were ultimately decided in his favor.[4] Logue never alleges, as he cannot, that Vakili was responsible for instituting those charges. As set forth in the Complaint, Vakili did not come into contact with Logue until January 28, 2003, more than one month after his arrest. (Complaint,

---

[4] For the purposes of this motion, Vakili does not argue whether the City of Cambridge initiated charges against Logue in good faith. This is clearly a question that will require more than the bare complaint to determine.

6

First Cause at ¶ 4-5). The City of Cambridge officially brought charges against Logue in December 2002. Vakili is not liable for the initiation of prosecution against Logue. Logue's only argument, therefore, is that Vakili is liable for continuation of the prosecution. As Logue's court-appointed attorney, however, Vakili did nothing in concert with the City of Cambridge to needlessly continue the criminal proceedings.

Logue's complaint cites to a case of this Court for support that a person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by another is subject to the same liability as if he had initiated the proceedings. Mitchell v. City of Boston, 160 F.Supp.2d 201, 215 (D.Mass. 1997). In addition to the fact that the court in Mitchell did not find any liability, the facts are easily distinguishable from the current matter. In Mitchell, a former criminal defendant brought suit against two police officers who aided in gathering facts against the plaintiff and allegedly contacted the district attorney with new, and possibly false, evidence not made part of the original police report, in order to make sure the plaintiff went to jail. The court found that officer's conduct did not amount to continuing the criminal proceedings initiated by another. *Id.*

In this case, Logue alleges that Vakili aided in continuing his prosecution by rescheduling the pre-trial conference. Logue admits, however, that he was unable to attend the February 28, 2003, pre-trial conference that Vakili rescheduled to March 11. (Complaint, First Cause at ¶ 5). Such rescheduling is common in the legal system as attorneys or clients often have valid reasons for rescheduling hearings. In this case, Logue himself admits that he was unable to attend the pre-trial conference. Thus, Vakili rescheduled the pre-trial conference to a date when Logue could attend. The fact that Logue's pre-trial conference was pushed back for a short time does not demonstrate that Vakili was party to some conspiracy to continue the prosecution against

7

him. Even Logue's bare allegation as to Vakili's motivation is insufficient absent the allegation of facts to prove that Vakili acted specifically to prolong his criminal prosecution. *See* Pigott, 1993 U.S. App. LEXIS at *19-20 (complaint dismissed where it contained "only the most conclusory allegations of conspiracy"). No facts are alleged in the complaint to tie Vakili to either a conspiracy or some other private motivation for continuing Logue's prosecution. Delay in the court's trial schedule is a part of the legal process. No attorney can guarantee that just because the court at some point sets down a date for a hearing or a trial, that the event will occur on that date. This Court must not sanction legal proceedings against a court-appointed defense counsel simply because a hearing did not occur exactly on the date the plaintiff desired.

Logue's complaint fails to provide a set of facts on which this Court could conclude that Vakili aided in either the initiation of criminal proceedings or for the continuation of proceedings brought without probable case.

### b.   Logue fails to allege two factors in his claim for intentional infliction of emotional distress.

Logue's Third Cause alleges that Vakili intentionally inflicted emotional distress against Logue. The Complaint, however, fails to allege facts to support two key elements of the claim, requiring this Court to dismiss the count.

A claim for intentional infliction of emotional distress has four elements: 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of her conduct; 2) the defendant's conduct was "extreme and outrageous," "beyond all bounds of decency," and was "utterly intolerable in a civilized community"; 3) the defendant's actions caused distress to the plaintiff; and 4) the emotional distress was severe and of a nature "that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).

To make a valid claim for intentional infliction of emotional distress, the actor's conduct must be more than "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" nor even is it enough 'that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466, 681 N.E.2d 1189, 1197 (1997) (citations omitted). Logue's Complaint fails to allege conduct that is extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community, as well as failing to allege reasonable facts that the emotional distress was severe and of a nature that no reasonable man could be expected to endure it. Although the standard of sufficiency in Massachusetts is fairly liberal, there certainly exists a threshold level which a claimant must reach in order to plead extreme and outrageous conduct. Boyle v. Wenk, 378 Mass. 592, 595, (1979).

Logue alleges four facts for his claim of intentional infliction. He alleges that: Vakili failed to inform the court as to Logue's innocence at the pre-trial conference on January 28, 2003 (Complaint, Third Cause at ¶ 5); that Vakili failed to move for dismissal at the pre-trial hearing scheduled for February 28, 2003 (Id.); that Vakili failed to inform Logue of the rescheduled pre-trial hearing on March 11, 2003 (Id.); and that Vakili failed to return Logue's phone calls (Id. at ¶ 8). Even in combination, these facts do not amount to extreme or outrageous conduct. On January 28, 2003, Vakili had just met Logue and did not have an opportunity to review his case, the factual background, or do any investigation into the legal theories Logue wanted advanced. It is not outrageous that all Vakili did was reschedule the hearing for February to give herself time to become familiar with the matter. Although Logue alleged that Vakili did not move to dismiss

9

the charges against him at the February 28, 2003, pre-trial conference, he admits that he was unable to attend the pre-trial conference. His inability to attend would have been detrimental to any motion to dismiss as Logue was a key fact witness. Vakili reasonably rescheduled to a date when Logue would be available. Logue's allegation that Vakili did not inform him as to the new date is also false. Logue admits in his Complaint that Vakili mailed him a letter with the information (Complaint, Third Cause at ¶ 5). Unfortunately, mail was the only method by which Vakili could get in touch with Logue, as he did not have a telephone. While it is unfortunate, that Logue did not receive the letter in time, it does not evidence extreme or outrageous conduct. Finally, Logue's claim that Vakili did not return his phone calls is implausible. As stated earlier, Logue did not have a telephone. He provided Vakili only with a mailing address. If Logue called, and did not reach Vakili directly, she had no means of calling him back without Logue's leaving a phone number, which he never did. It is not extreme or outrageous for Vakili not to return phone calls when she had no place to call.

Even if the Court concludes Vakili's conduct was extreme or outrageous, Logue fails to allege that the conduct was severe and of a nature that no reasonable person could be expected to endure. Logue himself admits that he did endure the conduct, and the charges against him were dismissed. Despite the fact that Vakili did not file a motion to dismiss, Logue admits that he filed his own motion. (Complaint, Third Cause at ¶ 5). Despite the fact that Vakili's message about the March 11, 2003 pre-trial hearing did not arrive in time, resulting in a default against Logue, Logue successfully removed the default and proceeded with his case (Id.). Despite the fact that Vakili was unable to return Logue's phone messages, the delay in Logue's case was only four weeks, hardly the kind of thing so severe that no reasonable person could be expected to endure. This might be different if Logue was in jail awaiting trial. He was, however, not jailed during his

case. Ultimately, Logue states that the charges against him were dismissed, meaning that he successfully managed his case after he removed Vakili as counsel.

As Logue is unable to allege viable facts evidencing extreme or outrageous conduct, or that the conduct was so severe that no reasonable person could be expected to endure it, the Court must dismiss his claim for intentional infliction of emotional distress.

For all of the above-mentioned reasons, this Court must dismiss the Complaint due to a lack of subject matter jurisdiction. If the Court finds there is subject matter jurisdiction, it must dismiss the counts for malicious prosecution and intentional infliction of emotional distress due to the failure to state a claim on which relief can be granted.

## REQUEST FOR ORAL ARGUMENT

Vakili respectfully requests a hearing on her motion to dismiss.

Respectfully submitted,
Michele Vakili

By her attorneys,

_____
David Hatem, BBO #225700
Nancy M. Reimer, BBO #555373
Douglas M. Marrano, BBO #644030
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
617-406-4500

Dated: October 25, 2004

11

## Certificate of Service

I, Douglas Marrano, hereby certify that on this 25th day of October, 2004, I have given notice of the above Motion to Dismiss of the defendant, Michele Vakili, by mailing a copy thereof, certified mail, return-receipt requested, to George Logue, General Delivery, Boston, MA 02205.

_____
Douglas Marrano

00870611